Elisa Y. Lee (Cal. State Bar No. 348087)
**LAW OFFICE OF ELISA Y. LEE**
47 W. Polk St. Suite 100-210
Chicago, IL 60605
Phone: 312-500-2120
Fax: 312-312-9690
elisa@elisaleelaw.com

Attorney for Defendant
CASEY GOONAN

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

CASEY ROBERT GOONAN,

Defendant.

Case No. 24-CR-00414-JSW

**DEFENDANT'S NOTICE OF MOTION AND MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255; REQUEST FOR EVIDENTIARY HEARING; VERIFICATION**

Date: TBD
Time: TBD
Place: TBD

TO: UNITED STATES OF AMERICA, PLAINTIFF; CRAIG H. MISSAKIAN, UNITED STATES ATTORNEY, AND NIKHIL BHAGAT, ASSISTANT UNITED STATES ATTORNEY, COUNSEL FOR PLAINTIFF

PLEASE TAKE NOTICE that at a time and place to be determined by the Court, Defendant Casey Robert Goonan, through his attorney Elisa Y. Lee, will and hereby does move the Court, pursuant to 28 U.S.C. § 2255, for an Order vacating, setting aside or correcting the sentence entered against him on the ground that the judgment violates the Constitution and laws of the United States and the judgment is otherwise subject to collateral review. He will begin by providing all the information required by this Court's § 2255 motion form (available at https://cand.uscourts.gov/forms/motion-vacate-set-aside-or-correct-sentence-person-federal-custody-under-28-usc-ss-2255) and by Rule 2 of the Rules Governing Section 2255 Proceedings for the United States District Courts, and then set forth fuller discussions of fact and law, with record citations, in the incorporated Memorandum filed simultaneously herewith.

Mr. Goonan is currently incarcerated at FCI Allenwood Medium in White Deer, Pennsylvania, Prisoner No. 24611-511, serving the sentence imposed in this case. On September 23, 2025, he was sentenced by Judge Jeffrey S. White to 235 months of incarceration after entering a plea of guilty on January 14, 2025 to one count of Damage and Destruction by

Fire/Explosive of Property Used in Interstate Commerce, 18 U.S.C. § 844(i).[1] A judgment of conviction was entered against him on September 26, 2025.[2]

Mr. Goonan did not file a Notice of Appeal. He has not previously filed any other motion, petition, or application concerning this judgment of conviction in any court. He does not have any future sentence to serve after he completes the sentence for the judgment he is challenging.

---

[1] The Indictment charged Mr. Goonan with three counts; Mr. Goonan pled guilty to Count Two. Pursuant to the plea agreement, Counts One and Three of the Indictment—which charged him with Damage and Destruction by Fire/Explosive of Property Belonging to Institution Receiving Federal Financial Assistance, 18 U.S.C. § 844(f)(1), and Possession of Unregistered Firearm, 26 U.S.C. § 5861(d), respectively—were dismissed.

The three counts were all related to a single June 1, 2024 incident in which a U.C. Berkeley police vehicle had been set on fire with Molotov cocktails, for which Mr. Goonan had been arrested on June 17, 2024. As part of the plea agreement, Mr. Goonan also admitted his involvement in four other uncharged acts, including a June 11, 2024, attempt to firebomb the Ronald V. Dellums Federal Building and United States Courthouse in Oakland, California.

Mr. Goonan also agreed in his plea agreement to the application of U.S. Sentencing Guideline § 3A1.4, known as the "terrorism enhancement," which increased his Offense Level by 12 points to a total Offense Level of 33, after a three-level reduction for acceptance of responsibility; and raised his Criminal History Category from I to VI. The government in turn agreed to recommend a sentence no higher than 188 months. Although the Guidelines range was not specified in the plea agreement, an Offense Level of 33 and Criminal History Category VI results in a Guidelines range of 235–293 months. Without the terrorism enhancement, Mr. Goonan's Guidelines range would have been 37–46 months.

[2] This motion is timely pursuant to 28 U.S.C. § 2255(f)(1), which provides that this motion is due one year from "the date on which the judgment of conviction becomes final." Mr. Goonan's judgment of conviction became final on October 10, 2025—14 days after the judgment was entered on September 26, 2025—pursuant to Rule 4(b)(1)(A)(i) of the Federal Rules of Appellate Procedure. One year from October 10, 2025 is October 10, 2026, which was a Saturday, and Monday, October 12, 2026, was a legal holiday. *See* https://cand.uscourts.gov/about-court/locations-hours/court-holidays (listing October 12, 2026, as a court holiday). Accordingly, pursuant to Rule 45(a)(1)(C) of the Federal Rules of Criminal Procedure, as well as Rule 6(a)(1)(C) of the Federal Rules of Civil Procedure, the deadline for filing this motion is today, Tuesday, October 13, 2026.

At his initial appearance, Mr. Goonan was represented by Angela Hansen of the Federal Public Defender's Office. At every subsequent court appearance, including his arraignment, plea, and sentencing, Mr. Goonan was represented by Sarah Potter of the Law Office of Sarah Potter. In addition to Attorney Potter, Mr. Goonan retained Jeff Wozniak, of the Law Offices of Jeff Wozniak, but Attorney Wozniak did not enter an appearance in the case. Mr. Goonan did not testify at a pretrial hearing, trial, or post-trial hearing.

The grounds on which Mr. Goonan bases his claim that his sentence is invalid, and the facts supporting said grounds, are as follows:

**GROUND ONE**

Mr. Goonan received ineffective assistance of counsel, in violation of the rights guaranteed him by the Sixth Amendment, when his trial counsel failed to assert his Due Process rights under the United States Constitution as well as 28 U.S.C. § 455 and move for disqualification of all judges in the Oakland federal courthouse. This claim is based on the following:

1. Counsel's conduct fell below the standard of care established by *Strickland v. Washington*, 466 U.S. 668 (1984), by allowing who the government and Court viewed as the defendant's victims—the staff, including the judges as well as the security officers, of the courthouse building Mr. Goonan admitted to attacking—to participate in his sentencing.
2. Defense counsel chose not to move to disqualify Judge White or for change of venue because they feared that Mr. Goonan would be moved to a more conservative district if they did so, or even to another state. They believed it was less risky to gamble that Judge White would not be swayed by emotion and that he would be fair to the

defendant at sentencing.

3. However, at sentencing, immediately after making impassioned statements of impermissible bias against Mr. Goonan, Judge White imposed a sentence that was nearly the statutory maximum and clearly excessive based on the record and the parties' sentencing submissions and arguments at sentencing. Judge White differed substantially from the evaluation of both the Probation Office and the government regarding what sentence would be sufficient to satisfy the goals of 18 U.S.C. § 3553; and then specifically relied upon the fact that one of Mr. Goonan's crimes was committed "on this very court – this very courthouse" in support of his unreasonable sentencing decision.

**GROUND TWO**

Mr. Goonan received ineffective assistance of counsel, in violation of the rights guaranteed him by the Sixth Amendment, when his trial counsel failed to ensure that his consent to a biased judge was unequivocal, knowing, intelligent, and voluntary, and that his waiver was personally made in court; in further violation of his Due Process rights under the United States Constitution as well as 28 U.S.C. § 455. This claim is based on the following:

1. Mr. Goonan did not unequivocally, knowingly, and intelligently waive his right to an impartial judge. Any elements of a valid waiver were completely absent from Mr. Goonan's court proceedings in this case. Judge White never raised the issue, nor did he ever disclose prior to sentencing that he might be biased against Mr. Goonan due to the fact that one of Mr. Goonan's crimes was an attack on the very courthouse Judge White sits in. The Court did not advise Mr. Goonan of his right to an impartial judge and did not provide him with an opportunity to personally assert or validly

waive it.

2. Counsel's conduct fell below the *Strickland* standard of care by their failure to fully explain to Mr. Goonan all potential advantages and disadvantages of proceeding to sentencing with Judge White, and all the options available to Mr. Goonan if he was concerned about Judge White's impartiality.

3. Defense counsel discussed the topic of recusal or change of venue with Mr. Goonan for no more than a total of approximately ten minutes, and only in the period before Mr. Goonan signed the plea agreement—long before Mr. Goonan ever appeared in court before Judge White, as his initial hearings were before Magistrate Judge Ryu.

4. His attorneys advised him that it was best to proceed in the Oakland federal courthouse with a judge of that court, because they feared that if they moved to recuse or change venue, Mr. Goonan's case would end up in a more conservative district. They also told Mr. Goonan that he could also be moved to another state if they were to move to recuse or change venue, and that he would not want that because it would mean he would be moved further away from his loved ones and lose his cherished in-person visits.

5. Finally, during discussions regarding the plea offer, Mr. Goonan recalls that one of his attorneys, either Attorney Potter or Attorney Wozniak, had told him that they had received some kind of confirmation that the Oakland courthouse venue would not be a factor in his sentencing. It was Mr. Goonan's understanding from that conversation that his attorneys had received such confirmation from either the prosecutor or the Court.

6. Mr. Goonan accepted his attorneys' advice and went along with the decision to keep

Judge White and not move for recusal or for a change of venue.

7. After he signed the plea agreement, his attorneys never again raised or discussed the topic of recusal or change of venue with him.

8. Defense counsel should have advised Mr. Goonan of all that Judge White should have stated on the record in court to Mr. Goonan. They should have made sure that Mr. Goonan understood the judge's role and how a biased judge could materially impact his liberty interest, as the judge's bias could play a material factor in the sentence he received. They should have told Mr. Goonan that, whatever their personal opinion of Judge White, a reasonable person might have a different view about his ability to be impartial. They should have told him that Judge White was technically an intended victim of Mr. Goonan's June 11, 2024 firebombing attempt, and therefore, they could not say with certainty whether Judge White would be able to be impartial. They should have told Mr. Goonan that, because the facts of the case were so personal, targeting the very building in which Judge White presided as a judge for over two decades, that Judge White might hold it against Mr. Goonan at sentencing without being conscious of his animosity.

9. Instead, neither Attorney Potter nor Attorney Wozniak explained to Mr. Goonan the importance of his constitutional right to an impartial judge. They did not tell him that the law recognized that Judge White could have a bias against him without being aware of it, or that unconscious bias could be a reason to disqualify him or any other judge in the Oakland federal courthouse.

10. Had Mr. Goonan been fully informed of the disadvantages of proceeding with Judge White—particularly about the likelihood of "unconscious bias"—he would not have

consented to Judge White presiding over his sentencing and would have asked his attorneys to move for his disqualification.

**GROUND THREE**

Mr. Goonan received ineffective assistance of counsel, in violation of the rights guaranteed him by the Sixth Amendment, when his trial counsel proceeded to allow Judge White to exercise unchecked discretion in sentencing Mr. Goonan, and failed to object when Judge White expressed impermissible bias toward Mr. Goonan at his sentencing—a bias which led Judge White to inadequately consider the 18 U.S.C. § 3553(a) sentencing factors and impose an excessive sentence nearly five years above the Probation Office's recommended sentence, and nearly four years above the government's recommended sentence; in further violation of his Due Process rights under the United States Constitution as well as 28 U.S.C. § 455. This claim is based on the following:

1. The principle, supported by Ninth Circuit case law, that a biased judge may not exercise discretion in sentencing, but may only impose a stipulated/agreed-to sentence between the parties, was never raised or explained to Mr. Goonan, either by the Court or his counsel.
2. Although the government raised the potential conflict at Mr. Goonan's initial appearance on July 11, 2024, and Magistrate Judge Ryu responded that "we don't have a conflict problem," Judge Ryu was only speaking for herself, not Judge White. Moreover, she made that statement in the earliest stage of the case, before discovery began, and before Mr. Goonan's trial counsel even appeared in the case. AUSA Bhagat even acknowledged that he was "not concerned that your Honor has a conflict, but I know that the canons are very, sort of, broad, and they talk about

appearance of – that the impartiality might reasonably be questioned. So I wanted to just bring it to the Court's attention, so that the Court had all the facts to make its own decision." July 11, 2024 Transcript of Proceedings at 11:6–14:10. This is why Judge Ryu then ordered the parties to submit to the Court in writing their positions on the issue by July 16.

3. In an email to AUSA Bhagat on July 15, Mr. Goonan's soon-to-be-retained attorney, Sarah Potter, punted the recusal issue, writing that "we do not intend to address detention at the moment so I think that sort of moots the recusal issue." Bhagat then filed a letter dated July 15 with the Court on July 17, stating that "Mr. Goonan's counsel has advised that Mr. Goonan intends to waive pretrial detention at the status conference on July 18. Given that intention, Mr. Goonan's position is that Your Honor need not consider or decide this issue until and unless at some future date, the Court reopens the detention hearing pursuant to 18 U.S.C. § 3142(f)(2)."[3]

4. The reason the bias issue would have been relevant if a detention hearing had happened is because the Court would have had to exercise discretion in deciding on whether Mr. Goonan should be released or detained. A detention hearing never happened, and the issue was never raised or discussed again before the Court.

5. More than a year later, at Mr. Goonan's sentencing, Judge White did not hold back in making his bias against Mr. Goonan abundantly clear, which was a shock to Mr. Goonan. Bhagat had written in the July 15, 2024 letter to Judge Ryu that, "[p]articularly given that there is no evidence that Mr. Goonan's actions were aimed

[3] Mr. Goonan was not provided a copy of this letter and did not know about it until this year, when undersigned counsel read its contents to him over the phone during a legal call.

specifically at the Court or the judiciary, the government does not believe that Your Honor's presiding over the detention hearing in this case would create an appearance of impropriety." Yet, at Mr. Goonan's September 23, 2025 sentencing, Judge White made clear that he viewed Mr. Goonan's case as "one of the most serious series of crimes that I have seen" particularly because it involved an "assault on . . . ***this very courthouse***." September 23, 2025 Transcript of Proceedings ("Sentencing Tx.") at 20:21-24 (emphasis added).

6. Due to his strong bias against Mr. Goonan, Judge White failed to adequately consider the Section 3553(a) sentencing factors and imposed a sentence that was "greater than necessary."

7. Judge White explicitly admitted his bias when discussing the first sentencing factor—the nature and circumstances of the offense and the history and characteristics of the defendant. Regarding the offense, Judge White stated that, "in over 20 years on the bench, this is one of the most serious series of crimes that I have seen," because "[i]t is an assault on our – attempted assault on our educational institutions, on this very court – this very courthouse. They were callous. They were – they could have resulted – as Government Counsel argues and is correct – the maiming of some of our federal officers and other bystanders. In his fleeing, it could have resulted in firearms being used by authorities. It's extremely dangerous actions on the Defendant's part." Sentencing Tx. at 20:19–21:4. Judge White's mention of "our federal officers" and Mr. Goonan's "fleeing" is a clear reference to the June 11, 2024 incident, which was the only one that involved federal officers and Mr. Goonan fleeing as described by the government during its sentencing argument. Judge White was clearly most

focused on and disturbed by the June 11 incident, the only incident about which he stated any specifics. The rest of Mr. Goonan's criminal acts were addressed by Judge White in passing in just two brief, generic sentences:

> And I also look at how many criminal actions were shown by the record, how many, if you will, bad acts. In this case there are multiple bad acts on multiple occasions, cowardly acts that this Defendant committed without – with reckless disregard for life or property.

*Id.* at 21:5-9. Judge White did not go into any detail whatsoever about the other four acts; he did not even mention the June 1 police car firebombing that was the basis of Mr. Goonan's conviction and was the only crime he was charged with in this case.

8. Judge White was particularly impassioned in court when emphasizing that Mr. Goonan's criminal conduct included an assault on "this very courthouse," the one in which Judge White had sat for over two decades. This personal bias and emotional investment in Mr. Goonan's fate led Judge White to see Mr. Goonan's criminal acts in an excessively unfavorable light, resulting in his 235-month sentence that was demonstrably "greater than necessary" as evidenced by the fact that it was nearly four years longer than the government's own request; nearly five years longer than the Probation Office's request; and just five months short of the statutory maximum—which also meant that Mr. Goonan received no benefit from his U.S.S.G. § 3E1.1 three-level reduction for early acceptance of responsibility.

9. In contrast to his impassioned emphasis on the nature and circumstances of the offense, focusing almost entirely on the June 11, 2024 attack on the federal building and courthouse, Judge White gave very short shrift to "the history and characteristics of the defendant." 18 U.S.C. § 3553(a). Mr. Goonan's counsel spent nearly the

entirety of her sentencing argument focused on Mr. Goonan's mental health struggles, and submitted in support a 24-page report from forensic psychiatrist Dr. Jeff Gould, who concluded after evaluating Mr. Goonan in May 2025 that his behavior at the time of his crimes in June 2024 "was substantially caused by his psychiatric disorder" and that "[h]is risk for future violence is very low when not suffering from symptoms of his psychiatric disorder." Dkt. 65-2, Exhibit B to Goonan Sentencing Memorandum (filed under seal) at 12-13.

10. In fact, Mr. Goonan had been in such a severely unstable mental state just two weeks before the first criminal act in this case—the June 1, 2024 police car firebombing—that he was hospitalized on May 15, 2024, where he was sedated and placed on a 5150[4] hold for psychosis. *See* Dkt. 65 at 5. He was transferred to a psychiatric hospital the next day and formally diagnosed with bipolar disorder and obsessive-compulsive disorder, but left the hospital against medical advice after three days. *See id.*; Dkt. 65-2 at 3.

11. Judge White, in turn, gave barely a *minute* of attention to Mr. Goonan's well-documented mental health struggles that contributed to his crimes. Judge White stated that "he has had some challenges in his life, which I'm not going to go into in detail but they are chronicled in the pre-sentence report and in some of the writings and memos. And also he has a – you know, as the record indicates and as Counsel argues, some mental health challenges to – for him." Sentencing Tx. at 20:11-15. "I have no doubt that this Defendant has mental challenges. And maybe, maybe, those mental

---

[4] 5150 refers to involuntary commitment "[w]hen a person, as a result of a mental health disorder, is a danger to others, or to themselves, or gravely disabled, . . . ." Cal. Welfare & Institutions Code § 5150.

challenges resulted in the loss of impulse control by this Defendant, which enabled him to commit these crimes. I'm one that thinks in most cases – not in all cases – people who commit terrible crimes do so because there's some issue with their mental health that perhaps law-abiding citizens do not have. But I have no doubt that this Defendant knew exactly what he was doing at every moment that he was doing it and intended to create an air of fear and danger in our community." *Id.* at 21-10-20. That is the entirety of Judge White's attention to Mr. Goonan's extensively documented mental health issues, and notably the judge's language again focuses on the "air of fear and danger ***in our community***." *Id.* (emphasis added).

12. Judge White's bias also led him to overlook the *28* letters of support submitted by Mr. Goonan's family, friends, colleagues, and other community members. While Judge White described Mr. Goonan as having a "hatred of society and the community," these letters from dozens of reputable community members who knew Mr. Goonan personally before his arrest overwhelmingly describe Mr. Goonan as the complete opposite—as a kind and generous person who not only cares deeply for others and has an abounding love for community, but devoted his life to the hard work of serving the most marginalized and vulnerable members of our society; and to building a more just and humane world free of government oppression, violence, war, and genocide. *See* Dkt. 65-1; Dkt. 65 at 6-7.

13. Even though the 235-month sentence Judge White imposed was within Mr. Goonan's Guidelines range, it was based on impermissible factors and the Guidelines range overstated the appropriate sentence for Mr. Goonan—as both the government and the Probation Office recognized in their sentencing recommendations. Importantly, Mr.

Goonan had no prior criminal history and no prior history of violence or arson.

14. The terrorism enhancement gave Mr. Goonan a Guidelines range of 235–293 months, such that its application also increased his Guidelines range beyond the statutory maximum for Mr. Goonan's offense; the low end of the range was essentially at the statutory maximum (240 months). Judge White sentenced Mr. Goonan to the low end of the Guidelines range, but that range already represented an overstatement of the appropriate sentence in his case.[5]

15. Finally, 18 U.S.C. § 3553(a)(6) provides that, when sentencing a defendant, the Court "shall consider"—as in, *must* consider—"the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." The record shows that Judge White made no such consideration at all, which was a direct result of Judge White's bias and the failures of Mr. Goonan's trial counsel. A review of the sentencings in comparable cases, as well as cases with much more egregious conduct and harm caused, bears this out.

WHEREFORE, Defendant Casey Goonan prays that this Court vacate, set aside or correct his sentence. Alternatively, Mr. Goonan requests that the Court order the government to show cause why he should not be granted such relief, permit discovery and expansion of the record, and set an evidentiary hearing so that he may prove up his claims. He also requests that the Court take judicial notice of the record from the trial court proceedings, and he incorporates that record by reference.

---

[5] Mr. Goonan is not challenging the application of the terrorism enhancement in his case. He is only challenging his excessive sentence, not his guilty plea or plea agreement. He continues to take full responsibility for his actions.

Mr. Goonan also prays that the Court grant such additional relief as may be appropriate and dispose of the matter as law and justice require.

Finally, Mr. Goonan prays that this case be reassigned to a different district judge, which due to Judge White's demonstrated bias against Mr. Goonan is advisable to maintain the appearance of justice.

Dated: October 13, 2026

Respectfully submitted,

/s/ Elisa Y. Lee
ELISA Y. LEE (Cal. State Bar No. 348087)
Attorney for Casey Goonan

**VERIFICATION**

I, Casey Robert Goonan, hereby declare under penalty of perjury that I am the petitioner in these § 2255 proceedings, I have reviewed the factual assertions contained within the foregoing motion and I know them to be true to the best of my knowledge, ability, and belief.

DATED this 13th day of October, 2026.

/s/ Casey Robert Goonan
CASEY ROBERT GOONAN